IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LAWRENCE M. MCFARLAND,                                    CV 05-6107-MO

               Plaintiff,                      OPINION AND ORDER

    v.

JO ANNE B. BARNHART, Commissioner
of Social Security,


             Defendant.

     ALAN STUART GRAF
     1020 SW Taylor Street, Suite 230
     Portland, OR  97205

         Attorney for Plaintiff

     KARIN J. IMMERGUT
     United States Attorney
     NEIL J. EVANS
     Assistant United States Attorney
     1000 S.W. Third Avenue, Suite 600
     Portland, OR  97204-2902

     THOMAS M. ELSBERRY
     Special Assistant United States Attorney
     Social Security Administration
     701 5th Avenue, Suite 2900 M/S 901
     Seattle, WA  98104-7075

         Attorneys for Defendant

MOSMAN, Judge:

## **INTRODUCTION**

Plaintiff, Lawrence McFarland, brings this action for judicial review of a final decision of the Commissioner of Social Security, dated June 30, 2004, denying his application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.  42 U.S.C. §§ 1381-83f.  This court has jurisdiction under 42 U.S.C. § 405(g).

Mr. McFarland was 50 years old at the time of the Administrative Law Judge's (ALJ) final decision denying benefits. He has a GED and past work as a tree service topper and a mill worker.  In the instant case Mr. McFarland alleged disability beginning on September 1, 1999, based on a past neck injury, cervical spondylosis, cervical spondylolisthesis, gastrointestinal problems, a past fractured leg, hypertension, depression, and personality disorders.  However, Mr. McFarland previously applied for disability benefits on July 24, 2000 and August 13, 2001.

Mr. McFarland did not appeal the denial of either of his previous applications.  Thus, it was within the discretion of the ALJ to apply *res judicata* to bar reconsideration of evidence she previously considered in Mr. McFarland's prior applications by declining to reopen them.  *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).

The Commissioner argues that since Mr. McFarland was not eligible to receive benefits prior to September 2002[1], only evidence from that date forward should be considered in deciding if he is disabled.  However, section 416.335 contains no prohibition on consideration of evidence pre-dating the date a claimant becomes eligible to receive SSI benefits.  To the contrary, it contemplates that evidence could support a finding of disability prior to the application date, even though he would not be entitled to receive benefits until one month later.  Thus, I disagree with the Commissioner that only evidence post-dating the date of eligibility may be considered.

In any event, it is clear that the ALJ did consider evidence predating September 2002.  I agree with Mr. McFarland that the ALJ's decision must be treated as a *de facto* reopening of Mr. McFarland's prior applications because he accepted Mr. McFarland's disability onset date of September 1, 1999, and he considered evidence of disability from a medical evaluation by Douglas Kirkpatrick, M.D. on August 16, 2001, which incorporated an MRI result from June 2001.  Under these circumstances it is appropriate for the Court to consider evidence from Mr.

---

[1] Under 20 C.F.R. § 416.335, the earliest a claimant can begin receiving SSI benefits is the month after the month he applied for benefits.  In this case, Mr. McFarland applied for benefits on August 21, 2002, so he was not eligible to begin receiving benefits until September, 2002.

McFarland's prior adjudications, as the ALJ did.  *Cf. Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001).

On appeal to this court, Mr. McFarland claims the ALJ erred by (1) failing to consider all of Mr. McFarland's impairments, either singly or in combination; (2) failing to properly consider whether his impairments equaled a Listed Impairment at step three; (3) improperly rejecting his testimony; (4) improperly rejecting lay witness testimony; and (5) failing to consider the side effects of his medication.

For the reasons that follow, the Commissioner's decision is affirmed and this case is dismissed.

### STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42

U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found Mr. McFarland had not engaged in substantial gainful activity since his alleged disability onset date. *See* 20 C.F.R. § 416.920(b).

At step two the ALJ found Mr. McFarland had the following severe impairments: cervical spondylosis at multiple levels with neuroforaminal narrowing and mass effect on the cord from osteophytes, status post surgery; a history of left tibia fracture with significant healing by November, 2003; depression; personality disorder with borderline, histrionic, narcissistic, avoidant, and dependent traits; a history of polysubstance abuse involving alcohol, marijuana, methamphetamine, LSD and cocaine; and Hepatitis C. *See* 20 C.F.R. § 416.920(c).

At step three the ALJ determined that Mr. McFarland's impairments did not meet or equal the requirements of a listed impairment. *See* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

The ALJ assessed Mr. McFarland with a residual functional capacity (RFC) to perform light work lifting 10 pounds frequently and 20 pounds occasionally, but limited by: only occasional overhead reaching, ladder climbing or crawling; no neck movement to the extremes of normal range; moderate limitation in understanding, remembering and carrying out detailed instructions with the option to refer to a list; and moderate limitations independently formulating plans and goals. *See* 20 C.F.R. §§ 419.920(e), 416.945.

At step four the ALJ found Mr. McFarland was unable to perform his past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f).

At step five, however, the ALJ found Mr. McFarland remained capable of performing other work existing in significant numbers in the national economy, such as bindery machine feeder, folding machine operator, and motel cleaner.  *See* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## **DISCUSSION**

### I.  **Substantial evidence supports the ALJ's assessment of Mr. McFarland's severe and non-severe impairments.**

To progress beyond step two of the five-step sequential evaluation a disability claimant must prove (a) that he has a "medically determinable physical or mental impairment," (b) that is severe, within the meaning of the Social Security Act.  *See* 20 C.F.R. §§ 416.905, 416.920(c); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

To show a "medically determinable physical or mental impairment," the claimant must proffer medical evidence from "acceptable medical sources" listed in 20 C.F.R. § 416.913, such as licensed physicians and licensed psychologists.  This evidence should include: (1) medical history; (2) clinical findings; (3) laboratory findings; (4) diagnosis; (5) treatment prescribed and the claimant's response and prognosis; and (6) a statement about what the claimant can still do despite his impairment(s) "based on the acceptable medical source's findings."  *See* 20 C.F.R. §§ 416.908, 416.912.

To show an impairment is "severe," the medical evidence must establish that it significantly limits the claimant's ability to do basic work activities, such as: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. *See* SSR 96-3p.

Even if a claimant fails to meet the requirements for proving he suffers from a severe impairment, the ALJ will still consider the combined effect of all his alleged impairments to determine if the combined impact precludes the claimant from engaging in substantial gainful activity. *See* 20 C.F.R. § 416.923.

In this case, the ALJ determined that Mr. McFarland suffered from six severe impairments, including cervical spondylosis, a history of left tibia fracture, depression, personality disorder, a history of polysubstance abuse, and Hepatitis C. However, Mr. McFarland contends the ALJ did not consider whether some of his alleged impairments were severe, or what effect they had in combination with his other severe impairments. Specifically, he

claims the ALJ failed to consider his headaches, gastrointestinal problems, hypertension, hepatitis C, mental impairments, and the side effects of medication.

### A.   Headaches

According to Mr. McFarland, the ALJ overlooked evidence that his headaches were "so severe he went to the Emergency Room vomiting from pain six times in 2000."  To substantiate this claim Mr. McFarland points to a March 1, 2001 "Patient Progress Note" from an unidentified medical facility, on which a nurse practitioner noted Mr. McFarland's self-report that he went to the emergency room "a few times" that year for pain and bleeding ulcers.

Absent medical evidence from "acceptable medical sources" substantiating a claimant's alleged impairments, the ALJ is not required to discuss them.  The ALJ need only explain why "significant probative evidence has been rejected." *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984); *see also Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  Here, the evidence the ALJ ignored regarding headaches was neither significant nor probative.  Therefore, I find no merit to Mr. McFarland's argument.

### B.   Gastrointestinal Problems

Mr. McFarland points to the same self-report about headaches as evidence of his allegedly severe gastrointestinal impairment

(GI). He avers that "numerous references throughout the medical records [substantiate his] GI problems and the different pain medications which were tried." However, he only cites to two pages in the record. The first is the same self-report to the nurse practitioner on March 1, 2001, claiming he went to the emergency room with bleeding ulcers. The second is another "Patient Progress Note" to the same nurse practitioner on March 23, 2001, which does not mention GI problems, but states that Mr. McFarland was taking Celebrex with no adverse side effects, and was prescribed Vicodin at the end of the visit.

The ALJ noted references in the record to gastrointestinal reflux disease, or GERD, in October and December 2003. These records stated that Mr. McFarland's GERD was "managed quite nicely with Nexium." Since Mr. McFarland does not point to any significant probative evidence the ALJ overlooked, I find the ALJ's assessment of the evidence regarding GI problems was reasonable, and his conclusion based on substantial evidence. No further consideration of this impairment was necessary.

### C.    Hypertension and Medication Side Effects

Mr. McFarland avers, without reference to the record, that his hypertension has not always been adequately controlled by medication. He also contends his blood pressure medication made him feel lethargic.

Ironically, in support of his claim that blood pressure medication made him tired, he points to a May 17, 2001 "Patient Progress Note" stating that he felt lethargic for two days so he stopped taking Monopril and was "feeling better and his [blood pressure] hasn't risen."  Thus, it appears his blood pressure was controlled without medication after this date, and as a result the fatigue associated with the medication also subsided.

In any event, the ALJ did not discuss Mr. McFarland's blood pressure, presumably because it was either controlled with or without medication after his alleged onset date.  Accordingly, during the period under review high blood pressure did not constitute a medically determinable impairment, causing work-related functional limitations, that was expected to last for a continuous period of at least 12 months.  *See* 20 C.F.R. § 416.905.

### D.  Hepatitis C

Mr. McFarland contends although his liver function tests were normal, Hepatitis C "could also have an effect on the type of medications prescribed."  He also points out that "a common side effect of Hepatitis C is fatigue," though he does not argue that he suffers from fatigue due to Hepatitis C.

It hardly needs restating that absent evidence that Hepatitis C actually caused Mr. McFarland fatigue, the ALJ had no duty to consider whether it did.  A mere diagnosis, without

attendant symptoms and side effects, does not entitle a claimant to benefits.

### E.    GAF Scores

According to Mr. McFarland, the ALJ wrongly overlooked three separate assessments of his Global Assessment of Functioning (GAF), each rating him at 50.  Pointing to United States District Court precedent from California and Pennsylvania, Mr. McFarland argues that a GAF of 50 is "generally considered supportive of a finding of disability."

A GAF score is only an estimate of a claimant's overall level of functioning.  *See* DSM-IV 30 (4th ed. 1994).  It cannot serve as a substitute for the required objective medical evidence and work-related functional assessments needed to establish disability under the Social Security Act.  However, a GAF of 50 is indicative of "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  *Id*. at 32.

Mr. McFarland is correct that the ALJ did not discuss the GAF scores in the record.  However, this omission was harmless because even if these scores were credited, they would not establish disability for several reasons.

First, none of the GAF scores was assessed by an acceptable medical source, as defined by the regulations.  Therefore they

are only entitled to the weight of lay witness testimony, which alone will not suffice to prove disability.

Second, two of the scores had expiration dates.  The score given by Randy Olander, M.A., on August 1, 2000, had a one-year expiration date, meaning it was no longer relevant at the time Mr. McFarland could have qualified for benefits in September 2002.  The score given by Sandra Willette, M.Ed., on October 23, 2002, had a one-month expiration date.

Third, by Mr. McFarland's own admission he was still abusing drugs at the time Michael McNamara, a psychiatric mental health nurse practitioner, evaluated him on August 21, 2000.  Notably, even when Sandra Willette evaluated Mr. McFarland in October 2002, she diagnosed him with current alcohol abuse and polysubstance dependance.  Not only could these serious symptoms account for a GAF score of 50, but each evaluator also noted situational stressors amounting to serious impairments in social or occupational functioning.  Thus, Mr. McFarland's low GAF scores are just as plausibly attributable to his own behavior and circumstances as they are to organic mental illness.

For all of these reasons, Mr. McFarland's GAF scores will not suffice to establish work-related functional limitations due to mental illness.

F.    Dr. Henry

Mr. McFarland claims that the ALJ rejected without comment the opinion of non-examining psychologist Robery Henry, Ph.D., who opined on February 10, 2003 that Mr. McFarland had moderate limitations in the ability to get along with co-workers.  In fact, the ALJ stated that Dr. Henry "provided no rationale for his conclusion of moderate restriction in activities of daily living," and that Mr. McFarland's own admissions show he was not so limited in this area.  The ALJ then stated:

> The overall evidence of record demonstrates that due to his psychological impairments, the claimant has moderate difficulties in maintaining concentration/persistence/pace. He has only mild restriction of activities of daily living and mild limitation in maintaining social functioning.  He has not experienced episodes of substantial decompensation.

In another section of his opinion the ALJ offered further detail, stating that lay witness testimony controverted findings of moderate restrictions in social functioning because they both testified that Mr. McFarland "gets along pretty well with others."

I find these to be specific and legitimate reasons for rejecting the opinion of a non-examining, contradicted physician.

## II.  **Substantial evidence supports the ALJ's step three finding.**

According to Mr. McFarland, the ALJ failed to adequately consider whether his impairments equaled a Listed Impairment considered so severe as to automatically constitute disability. *See* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).  It is not clear

14- OPINION AND ORDER

that Mr. McFarland alleged equivalence to a specific Listed Impairment at the administrative level. However, the ALJ considered whether his impairment met or equaled a number of Listed Impairments, stating:

> [T]he claimant's impairments, severe and nonsevere, singularly and in combination, are not accompanied by the findings specified for any impairment or combination of impairments included in any section of the Listings. No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Particular consideration is given to listing 1.00 (musculoskeletal system), 11.00 (neurological), and 12.00 (mental disorders) in Appendix 1, Subpart P, Regulations Number 4. Disability, therefore, cannot be established under 20 CFR 404.1220(d) or 416.920(d).

In his opening brief Mr. McFarland states that his musculoskelatal impairments and mental disorders combined to equal Listed Impairment 12.04, the listing for Affective Disorder. However, in response to defendant's argument that he failed to postulate a theory as to how his impairments equal the requirements of Listed Impairment 12.04, Mr. McFarland states in his reply that his theory is "pain from his neck injury, leg injury and depression interfere with his ability to concentrate."

To prove his impairments equaled Listed Impairment 12.04, Mr. McFarland had to prove he meets the requirements of (A) and (B), or (C), below.

> (A) Medically documented persistence, either continuous or intermittent, of one of the following:
>     (1) depressive syndrome;
>     (2) manic syndrome;

    (3) bipolar syndrome with a history of episodic periods
    manifested by the full symptomatic picture of both
    manic and depressive syndromes.

(B) Resulting in at least two of the following:
        (1) marked difficulties in activities of daily living;
        (2) marked difficulties in maintaining social
        functioning;
        (3) marked difficulties in maintaining concentration,
        persistence, or pace;
        (4) repeated episodes of decompensation, each of
        extended duration.

(C) Medically documented history of a chronic affective
disorder of at least 2 years duration that has caused more
than a minimal limitation of ability to do basic work
activities, with symptoms or signs currently attenuated by
medication or psychosocial support, and one of the
following:
        (1) repeated episodes of decompensation, each of
        extended duration;
        (2) a residual disease process that has resulted in
        such marginal adjustment that even a minimal increase
        in mental demands or change in the environment would be
        predicted to cause the individual to decompensate;
        (3) current history of one or more years inability to
        function outside a highly supportive living
        arrangement, with an indication of continued need for
        such an arrangement.

Based on Mr. McFarland's stated theory that neck and leg

pain interfere with his ability to concentrate, it would appear

he did not read the requirements of Listed Impairment 12.04.  In

any event, I find that the ALJ adequately compared Mr.

McFarland's impairments to the Listed Impairments they related

to, and reasonably found that Mr. McFarland failed to present

sufficient evidence to establish equivalence.  *See Burch v.*

*Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).  No more was

required.

### III.  Substantial evidence supports the ALJ's assessment of Mr. McFarland's testimony.

Mr. McFarland selectively quotes the ALJ's credibility assessment, arguing that the ALJ applied an "utterly incapacitated" standard of review, not a substantial evidence standard, because the ALJ wrote, "[No] treating or examining medical practitioner has indicated that the claimant is totally disabled."  Mr. McFarland also argues that the ALJ rejected his pain testimony based solely on a lack of supporting medical evidence.  Neither of these allegations are accurate.

The ALJ is not required to credit every allegation of disabling pain or else disability benefits would be available on demand.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, once a claimant establishes the existence of an impairment and a causal relationship between the impairment and some level of symptoms, the ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the claimant's subjective claims.  *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999); *see also Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. *See Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

Here, the ALJ properly applied this standard. He found Mr. McFarland to be substantially more capable than he claimed to be, that his allegations of chronic disabling neck and leg pain were disproportionate to the objective medical evidence which shows acute periods of illness of no more than a few months duration, and that Mr. McFarland's pain was adequately to well-controlled by medication.

The ALJ noted that Mr. McFarland's admitted activities of daily living were more consistent with someone who is capable of sustaining light work. The ALJ pointed out that Mr. McFarland has an extensive history of polysubstance abuse, suggesting a pattern of duplicity, evasion and misdirection, which was further evidenced by Mr. McFarland's lack of candidness about his under-the-table mechanics work after his alleged disability onset date. When directly confronted about this work, Mr. McFarland further

attempted to minimize it, stating that it was an unsuccessful work attempt that lasted one month.  In fact, the record shows he worked as a mechanic for up to five months in 2002.

The ALJ identified further inconsistency in Mr. McFarland's testimony that he must rest every 10 minutes while performing yard work.  The ALJ found that Mr. McFarland had never reported such extreme limitations to his medical providers, and that no objective medical findings support the need for such limitations. To the contrary, in November 2002 Martin Kehrli, M.D. assessed Mr. McFarland with the residual functional capacity (RFC) to perform a wide range of medium level work.  Dr. Kehrli rejected Mr. McFarland's contention that he could not sit, stand or walk for any length of time because Mr. McFarland performed housekeeping, went shopping, took classes to earn his GED in December 2001, and was working as a mechanic for the better part of 2002.

Scott Pritchard, D.O. substantially concurred with Dr. Kehrli's assessment when he reviewed Mr. McFarland's record in February 2003.  Dr. Pritchard found Mr. McFarland capable of a reduced range of light work, allowing lifting and carrying of 20 pounds occasionally and 10 pounds frequently, but with no other limitations in standing, walking, or sitting.

Finally, the ALJ found that while Mr. McFarland claimed to be disabled by depression and mental illness, he was not

undergoing psychological treatment, and lay witness testimony showed he was capable of getting along with other people.

In sum, I find the ALJ's reasons for rejecting Mr. McFarland's credibility are clear and convincing, and I find no merit to Mr. McFarland's arguments to the contrary.

## IV.    **The ALJ provided legally sufficient reasons for partially rejecting lay witness testimony.**

Mr. McFarland contends the ALJ rejected the testimony of his friend, Alan Gray, for unsupported, speculative reasons, in contravention of the standard.

The ALJ must account for lay witness testimony and provide germane reasons for rejecting it, but he is not required to discuss non-probative information. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

The ALJ discussed Mr. Gray's testimony in detail. He noted that Mr. Gray said Mr. McFarland gets angry a lot, goes to the grocery store once or twice a month, watches TV eight to ten hours a day, does not take walks very often, does his laundry once a week, and takes out the garbage once a week. The ALJ also noted that Mr. Gray indicated that Mr. McFarland was unable to dust or vacuum because of pain, and that he did not do yard work.

The ALJ accepted Mr. Grays observations, but stated that it was unclear "why the claimant would be incapable of dusting but would be capable of doing his laundry." The ALJ also found Mr.

20- OPINION AND ORDER

Gray's contention that Mr. McFarland did not do yard work was contradicted my Mr. McFarland's own testimony that he did do yard work occasionally.  Thus, to the extent the ALJ discredited Mr. Gray's testimony, he provided germane reasons for doing do.  I find no error here.

Though Mr. McFarland does not challenge the ALJ's assessment of the other lay witness testimony in the record, it bears mentioning that Katherine Stone, the mother of Mr. Gray's child, also provided testimony.  She stated that Mr. McFarland performs odd jobs at her house, and in exchange she occasionally pays his bills.  Ms. Stone testified that Mr. McFarland is a slow worker who takes a long time to complete tasks.  She indicated that she often observes Mr. McFarland resting while performing yard work. Ms. Stone also testified that Mr. McFarland gets along well with others, including her teenage daughter who is a "holy terror."

The ALJ generally credited Ms. Stone's testimony, but he did not agree with her conclusion that Mr. McFarland's habits were a result of incapacity.  He wrote, "[Ms. Stone's] description of [Mr. McFarland's] activities is as consistent with capacity as with incapacity and is also viewed as being consistent with his relaxed attitude and nonpressured lifestyle."

**<u>CONCLUSION</u>**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this __19th__ day of April, 2006.


                          _____
                          /s/ Michael W. Mosman
_____
                          Michael W. Mosman
                          United States District Judge

22- OPINION AND ORDER